UNITED STATES DISTRICT COURT  
DISTRICT OF CONNECTICUT  

FILED  
2013 JUN 25 PM 2 38  
U.S. DISTRICT COURT  
NEW HAVEN, CT  

| | |
|---|---|
| UNITED STATES OF AMERICA : | Crim. No. 3:13-CR-128 AWT |
| v. : | VIOLATIONS: 18 U.S.C. Sections 371 (Conspiracy), 2320 (Trafficking in Counterfeit Goods), 1349 (Wire Fraud Conspiracy), 1343 (Wire Fraud), 1956 (Money Laundering Conspiracy), and 2 (Aiding and Abetting) |
| PETER PICONE, : | |
| Defendant. : | |
| : | Forfeiture Allegation |

## INDICTMENT

The Grand Jury charges that, at all times relevant to this Indictment:

### COUNT ONE
(Conspiracy)

Introduction

Integrated Circuits

1. An integrated circuit, also referred to as "IC" or "chip," is a form of semiconductor. It is an electronic circuit consisting of components and connectors contained on a semiconductor chip. Usually packaged in a plastic or ceramic case, an integrated circuit is a sophisticated, highly miniaturized, solid-state circuit in which all the elements of the circuit are integrated together on a single semiconductor substrate. Integrated circuits contain tiny resistors, capacitors, and transistors on each chip and function as amplifiers, oscillators, timers, counters, computer memory, or microprocessors. Integrated circuits form the basis of all modem electronic products. Integrated circuits are used in a variety of applications including consumer electronics, transportation, medical, aircraft, spacecraft, and military.

2. Counterfeit ICs can result in product malfunctions or product failures and can also cause serious bodily injury including electrical shock, electrocution, and/or

death. Counterfeit ICs can also cause significant property damage. Counterfeit ICs can degrade systems into which they are placed by malfunctioning when placed into a product or system or by malfunctioning before their anticipated useful life has expired, thereby putting systems at risk for failure and necessitating costly systems analysis and replacement. A failed IC can result in an entire computer circuit board being replaced.

3. Counterfeit ICs also raise national security concerns, because the history of a counterfeit device is unknown, including who has handled it and what has been done to it. The devices can be altered and certain devices can be reprogrammed. Counterfeits can contain malicious code or hidden back doors enabling remote systems disablement, communication interception, and computer network intrusion.

Grade Markings

4. Grade markings on integrated circuits indicate that the part is "commercial-grade," "industrial-grade," or "military-grade." Legitimate manufacturers subject military-grade parts to specialized testing. Military-grade integrated circuits are sold to the U.S. military at a price higher than commercial- or industrial-grade, because of the special manufacturing techniques and additional testing required. Such parts have special markings that identify them as military-grade. Military-grade devices are tested to function at extreme temperatures (hot and cold) and/or to withstand extreme vibration. Such ICs are used in military and aerospace applications that must function in such places as those with the extreme heat of the desert or the extreme cold of deep sea, the atmosphere and outer space, and with extreme vibration conditions, such as in a vehicle traveling over rocky terrain or in a missile accelerating during launch.

Trademarks

5. A "trademark" is a word, phrase, symbol (such as a logo), design (such as an icon), or a combination thereof, which identifies and distinguishes the source of the goods of one particular manufacturer from those of other manufacturers. A trademark is often a valuable asset, equated with the "good-will" of a business organization, which can influence consumers in purchasing decisions.

6. A trademark serves a variety of purposes. First, it avoids product confusion by allowing consumers to have confidence that two products for sale bearing the identical trademark were manufactured by the same company and will be of the same quality. Second, it permits consumers to make an informed choice to purchase a name-brand good based upon past experience, word-of-mouth, brand loyalty, and advertising impact. Third, it enables consumers who experience a problem with the name-brand product they have purchased to seek recourse through the actual manufacturer by returning the goods to the seller or seeking warranty or other recourse through the original equipment manufacturer ("OEM"). Fourth, it allows the trademark owner to distinguish and protect its products by giving that company exclusive rights as the trademark owner. This permits the legitimate trademark owner to recoup investments of time, money, labor, and creativity and to profit from its endeavors in bringing a particular product to market.

The Defendant and His Companies

7. Defendant PETER PICONE ("PICONE") was a resident of Methuen, Massachusetts.

8. From on or about April 8, 2005 until its voluntary dissolution on or about August 24, 2010, PICONE owned and operated Tytronix, Inc. ("Tytronix"), serving as its president and

director. The stated type of business for the company was "Sale of Electronic Components." At the time of its incorporation, the street address of the company was 599 Canal Street, 3rd Floor West Suite 12 in Lawrence, Massachusetts. At the time of its dissolution, the street address of the company was 42 Tyler Street in Methuen, Massachusetts.

9. From on or about August 13, 2009 to the present, PICONE has owned and operated Epic International Electronics ("Epic"), serving as its president and director. The stated type of business for the company is "Broker of Electronic Components." The street address at the time of incorporation of the company was 42 Tyler Street in Methuen, Massachusetts.

10. From on or about July 3, 2009 to the present, PICONE and Epic have operated the website "www.epicie.com, " which advertises for sale numerous brand-name and trademarked integrated circuits. The Epic website contained a listing of approximately 150 electronics manufacturers whose products were offered for sale. The Epic website listed 13 Branch Street, Suite 207B in Methuen, Massachusetts as the company's address.

## The Conspiracy

11. From in or about February 2007 through in or about December 2012, within the District of Connecticut and elsewhere, PICONE, and others known and unknown to the Grand Jury, knowingly did conspire, combine, confederate, and agree with each other to intentionally traffic and attempt to traffic in goods and knowingly use counterfeit marks on and in connection with such goods, in violation of Title 18, United States Code, Section 2320(a)(1).

## Manner and Means of the Conspiracy

12. In furtherance of the conspiracy, and in order to effectuate the objects thereof, defendant PETER PICONE, and others known and unknown to the Grand Jury, used the following manners and means, among others:

A.  It was a part of the conspiracy that PICONE and his co-conspirators acquired integrated circuits bearing counterfeit marks from sources in China and Hong Kong and imported them into the United States through various ports of entry.

B.  It was a further part of the conspiracy that PICONE and his co-conspirators maintained an Internet website "www.epicie.com" and advertised name-brand and trademarked integrated circuits on the website.

C.  It was a further part of the conspiracy that PICONE and his co-conspirators provided materially false and fraudulent test reports concerning the integrated circuits that they sold.

D.  It was a further part of the conspiracy that PICONE and his co-conspirators provided materially false and fraudulent information concerning the manufacturer, country of origin, date of manufacture, and other characteristics of the integrated circuits they sold.

E.  It was a further part of the conspiracy that PICONE and his co-conspirators sold and distributed counterfeit and otherwise fraudulent integrated circuits to companies in the United States, including companies believed by PICONE to be contractors for the United States Department of Defense.

F.  It was a further part of the conspiracy that PICONE and his co-conspirators deposited proceeds from the sales of counterfeit and otherwise fraudulent integrated circuits into United States bank accounts and then transferred those proceeds to bank accounts located outside the United States in order to promote their continued trafficking of counterfeit and otherwise fraudulent integrated circuits.

Overt Acts

13. In furtherance of the conspiracy, and in order to effectuate the objects thereof, PICONE, and others known and unknown to the Grand Jury, committed the following overt acts, among others, within the District of Connecticut and elsewhere:

A. On or about April 26, 2010, an employee of Epic, acting under PICONE's direction and supervision, sent an email message in connection with the sale of integrated circuits to a customer in Connecticut stating that the ICs to be sold were "New parts."

B. On or about November 28, 2011, PICONE and his co-conspirators shipped integrated circuits bearing counterfeit marks of Xilinx, Inc., from Massachusetts to the U.S. Naval Submarine Base in Groton, Connecticut.

C. On or about February 15, 2012, PICONE and his co-conspirators shipped integrated circuits bearing counterfeit marks of National Semiconductor Corp., from Massachusetts to the U.S. Naval Submarine Base in Groton, Connecticut. The ICs were intended for use in a radio-transmitting test set of an active-duty nuclear submarine.

D. On or about February 15, 2012, PICONE and his co-conspirators shipped integrated circuits bearing counterfeit marks of Motorola, Inc., from Massachusetts to the U.S. Naval Submarine Base in Groton, Connecticut. The ICs were intended for use in the alarm panel of an active-duty nuclear submarine.

E. On or about January 27, 2012, an employee of Epic, acting under PICONE's direction and supervision, sent an email message in connection with the sale of integrated circuits to a customer in Connecticut, stating "We take the best steps possible to avoid junk getting into the market, especially military."

F.   From in or about February 2007 through in or about November 2011, PICONE and his co-conspirators imported from China and Hong Kong approximately 13,739 integrated circuits bearing counterfeit marks, valued at approximately $136,499.25, that were seized by Customs and Border Protection and destined for delivery to 599 Canal Street, 6th Floor, Suite 15 in Lawrence, Massachusetts or to 42 Tyler Street in Methuen, Massachusetts, as detailed below:

| DATE | DESCRIPTION OF GOODS | VALUE | SOURCE |
| --- | --- | --- | --- |
| February 28, 2007 | 2,000 counterfeit "Burr Brown" ICs | $9,900 | Shenzhen, China |
| August 3, 2007 | 1,474 counterfeit "Micro Linear" ICs | $21,373 | Shenzhen, China |
| December 9, 2007 | 250 counterfeit "Motorola" ICs and 50 counterfeit "Epson" ICs | $2,050 | Guangdong, China |
| January 13, 2008 | 115 counterfeit "Analog" ICs | $438 | Shenzhen, China |
| January 27, 2008 | 450 counterfeit "National Semiconductor" ICs | $7,200 | Guangdong, China |
| January 27, 2008 | 500 counterfeit "Dallas" ICs | $1,500 | Guangdong, China |
| March 1, 2008 | 801 counterfeit "Intersil," "Intel," and counterfeit "NEC" ICs | $1,293 | Shantou, China |
| March 2, 2008 | 754 counterfeit "Motorola" ICs | $1,697 | Shantou, China |
| June 5, 2008 | 4,000 counterfeit "Toshiba" ICs and 25 counterfeit "Burr Brown" ICs | $41,048 | Mong Kok, Hong Kong |
| June 26, 2008 | 800 counterfeit "AMD" ICs | $8,000 | Chao Nan District, China |
| June 27, 2008 | 850 counterfeit "Motorola" ICs | $15,172.50 | Shantou, China |
| March 3, 2009 | 200 counterfeit "Zilog" ICs | $2923.31 | Chaoyang, China |
| May 21, 2009 | 850 counterfeit "Xilinx" ICs | $9,868.50 | Shantou Guangdong, China |
| May 27, 2009 | 420 counterfeit "Intel" ICs | $10,442 | Shantou Guangdong, China |
| November 22, 2011 | 200 counterfeit "Xilinx" ICs | $3,593.94 | Shenzhen, China |

7

G.      On or about September 25, 2008, PICONE sent instant messages to "Greg" stating, "I have to buy China and risk fake parts to compete / its my whole biz."

H.      On or about March 5, 2009, PICONE and his co-conspirators sold 33 integrated circuits bearing counterfeit marks of Xilinx, Inc., to a defense contractor in Florida. The ICs were intended for use in repairing the secondary propulsion system of an active-duty nuclear submarine.

I.      On or about November 21, 2011, PICONE sent an instant message to "alex (HK)" stating, "this [part] is coming back remember. I am fighting with my customer, they want to destroy them for being counteffiet [sic]."

J.      On or about January 9, 2012, PICONE sent an instant message to "alex (HK)" stating, "customer declined the parts.. says they are counterfiet [sic]."

K.      On or about August 23, 2012, PICONE and his co-conspirators received a shipment of integrated circuits sent from Hong Kong by Hong Kong Origin Group Ltd.

L.      On or about September 4, 2012, PICONE and his co-conspirators sent a wire transfer of $1062.88 to the account of Hong Kong Origin Group Ltd., located in Hong Kong.

M.      On or about November 26, 2012, PICONE and his co-conspirators received a shipment of integrated circuits sent from Hong Kong by Hong Kong Origin Group Ltd.

N.      On or about December 19, 2012, PICONE and his co-conspirators sent a wire transfer of $910 to the account of Hong Kong Origin Group Ltd., located in Hong Kong.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Conspiracy to Traffic in Counterfeit Military Goods)

14. The allegations set forth in paragraphs 1 through 10 and 12 through 13 are incorporated as if fully set forth herein.

15. From in or about January 2012 through in or about April 2012, in the District of Connecticut and elsewhere, defendant PETER PICONE, and others known and unknown to the grand jury, knowingly did conspire, combine, confederate, and agree with each other to commit an offense against the United States; to wit, intentionally to traffic and attempt to traffic in goods, knowing that such goods were counterfeit military goods, the use, malfunction, and failure of which were likely to cause serious bodily injury and death, the disclosure of classified information, impairment of combat operations, and other significant harm to a combat operation, a member of the Armed Forces, and to national security, in violation of Title 18, United States Code, Section 2320(a)(3).

All in violation of Title 18, United States Code, Section 2320(a).

## COUNT THREE
(Trafficking in Counterfeit Goods)

16. The allegations set forth in paragraphs 1 through 10 and 12 through 13 are incorporated as if fully set forth herein.

17. On or about November 28, 2011, in the District of Connecticut and elsewhere, PICONE intentionally did traffic and attempt to traffic in goods and knowingly use a counterfeit mark on and in connection with such goods, to wit, PICONE, through Epic, sold and shipped to a customer in Connecticut integrated circuits, part number XC4062XLA-HQ240AKP0621, bearing a counterfeit mark of Xilinx, Inc., that was substantially indistinguishable from the

9

following registered trademark, the use of which was likely to cause confusion, to cause mistake, and to deceive:

| COMPANY | U.S. TRADEMARK REGISTRATION NO. | DESCRIPTION |
|---|---|---|
| Xilinx, Inc. | 1,713,232 | "X Xilinx" in stylized form |

All in violation of Title 18, United States Code, Sections 2320(a)(1), and 2.

## COUNT FOUR
(Trafficking in Counterfeit Goods)

18.  The allegations set forth in paragraphs 1 through 10 and 12 through 13 are incorporated as if fully set forth herein.

19.  On or about February 15, 2012, in the District of Connecticut and elsewhere, defendant PETER PICONE intentionally did traffic and attempt to traffic in goods and knowingly use a counterfeit mark on and in connection with such goods, to wit, PICONE, through Epic, sold and shipped to a customer in Connecticut integrated circuits, part number M3851011201BCA, bearing a counterfeit mark of National Semiconductor Corp. that was substantially indistinguishable from the following registered trademark, the use of which was likely to cause confusion, to cause mistake, and to deceive:

| COMPANY | U.S. TRADEMARK REGISTRATION NO. | DESCRIPTION |
|---|---|---|
| National Semiconductor Corp. | 1,901,163 | "N" in stylized form |

All in violation of Title 18, United States Code, Sections 2320(a)(1), and 2.

10

## COUNT FIVE
### (Conspiracy to Commit Wire Fraud)

20. The allegations set forth in paragraphs 1 through 10 and 12 through 13 are incorporated as if fully set forth herein.

21. From in or about February 2007 through in or about December 2012, in the District of Connecticut and elsewhere, PICONE, and others known and unknown to the grand jury, knowingly did conspire, combine, confederate, and agree with each other to commit an offense against the United States; to wit, having devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, a writing, sign, signal, picture, or sound for the purpose of executing such scheme or artifice, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1349.

## COUNTS SIX AND SEVEN
### (Wire Fraud)

22. The allegations set forth in paragraphs 1 through 10 and 12 through 13 are incorporated as if fully set forth herein.

23. From in or about February 2007 through in or about December 2012, in the District of Connecticut and elsewhere, PICONE devised a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, PICONE, and others in his employ and under his direction, made materially false and fraudulent representations concerning the integrated circuits being sold by Tytronix and

Epic, including but not limited to misrepresentations as to (1) the manufacturer, (2) the country of origin, (3) the date of manufacture, and (4) test results for said integrated circuits.

24. For the purpose of executing said scheme and artifice, PICONE did transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, the following writings, signs, signals, and sounds, each enumerated wire communication constituting a separate count of this Indictment:

| COUNT | DATE | WIRE COMMUNICATION |
| --- | --- | --- |
| SIX | April 26, 2010 | Electronic mail sent from Massachusetts to integrated circuit purchaser in Connecticut |
| SEVEN | January 27, 2012 | Electronic mail sent from Massachusetts to integrated circuit purchaser in Connecticut |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT EIGHT
(Conspiracy to Commit Money Laundering)

25. The allegations set forth in paragraphs 1 through 10 and paragraphs 12 through 13 are incorporated as if fully set forth herein.

26. From in or about March 2007 through in or about December 2012, in the District of Connecticut and elsewhere, PICONE, and others known and unknown to the grand jury, knowingly did conspire, combine, confederate, and agree with each other to commit an offense against the United States; to wit, to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of the specified unlawful activity alleged in Counts One through Seven of this Indictment, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

All in violation of Title 18, United States Code, Section 1956(h).

CRIMINAL FORFEITURE ALLEGATION

27. The allegations set forth in Counts One through Eight of this Indictment are incorporated as if fully set forth herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), 2323(a), and 2323(b), and Title 28, United States Code, Section 2461(c).

28. As a result of the offenses alleged in Counts One through Seven, defendant PETER PICONE shall forfeit to the United States: (a) any and all property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as the result of the offenses of conspiracy and a wire fraud scheme, (b) any and all property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as the result of the offenses of trafficking in counterfeit goods or services, (c) any article, the making or trafficking of which is prohibited by Title 18, United States Code, Section 2320, and (d) any property used, or intended to be used in any manner or part to commit or facilitate the commission of trafficking in counterfeit goods or services, including, but not limited to:

<u>Money Judgment</u>

At least in the amount of $2,581,714.29, which represents a sum of money constituting, or derived from, proceeds obtained, directly or indirectly, as a result of conspiracy, in violation of Title 18, United States Code, Section 371; a wire fraud scheme, in violation of Title 18, United States Code, Section 1343; trafficking in counterfeit goods or services, in violation of Title 18, United States Code, Section 2320; or property used, or intended to be used, in any manner or part to commit or facilitate the trafficking in counterfeit goods or services, in violation of Title 18, United States Code, Section 2320.

29. As a result of the offense alleged in Count Eight of this Indictment, PICONE shall forfeit to the United States, any and all property, real or personal, involved in a transaction or attempted transaction in violation of section 1956(h), or any property traceable to such property, including, but not limited to:

Money Judgment

At least in the amount of $1,760,035.20, which represents a sum of money involved in the money laundering transactions or attempted transactions, in violation of Title 18, United States Code, Section 1956(h).

30. By virtue of the commission of the felony offenses charged in this Indictment, any and all interest that defendant PETER PICONE has in (a) property constituting, or derived from, proceeds obtained directly or indirectly as the result of conspiracy, trafficking in counterfeit goods or services, or a wire fraud scheme; (b) any article, the making or trafficking of which is prohibited by Title 18, United States Code, Section 2320; (c) any property used, or intended to be used in any manner or part to commit or facilitate the commission of trafficking in counterfeit goods or services; and (d) property, real or personal, involved in a transaction or attempted transaction in violation of section 1956(a)(2)(A) and (2) or any property traceable to such property is vested in the United States and hereby forfeited to the United States pursuant to Title 18, United States Code, Section 981(a)(l)(C), Title 28, United States Code, Section 2461(c), Title 18, United States Code, Section 2323(a) and (b), and Title 18, United States Code, Section 982(a)(1).

31. If, as a result of any act or omission of PICONE, the property identified above:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 981(a)(l))(C), Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 2323(b), and incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of said property listed above as being subject to forfeiture.

All in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 2323(a) & (b), and 982(a)(1); Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/s/
_____
FOREPERSON

UNITED STATES OF AMERICA

_____
DEIRDRE M. DALY
ACTING UNITED STATES ATTORNEY

_____
RAYMOND F. MILLER
SUPERVISORY ASST. U.S. ATTORNEY

_____
CAROL SIPPERLY
TRIAL ATTORNEY
COMPUTER CRIME & INTELLECTUAL
PROPERTY SECTION

_____
EDWARD CHANG
ASST. U.S. ATTORNEY

_____
KENDRA ERVIN
TRIAL ATTORNEY
COMPUTER CRIME & INTELLECTUAL
PROPERTY SECTION