

**U.S. Department of Justice**

*United States Attorney*
*District of Connecticut*

**FILED**

2014 JUN -3 P 4: 25

US DISTRICT COURT
HARTFORD CT

*Connecticut Financial Center*      *(203)821-3700*
*157 Church Street, 25th Floor*      *Fax (203) 773-5376*
*New Haven, Connecticut 06510*      *www.justice.gov/usao/ct*

June 3, 2014

Jeffrey A. Denner, Esq.
J. A. Denner & Associates, P.C.
4 Longfellow Place, 35th Floor
Boston, MA 02114

> Re:   United States v. Peter Picone
>        Criminal No. 13-cr-128-AWT

Dear Mr. Denner:

This letter confirms the plea agreement between your client, Peter Picone (the "defendant"), and the United States Attorney's Office for the District of Connecticut (the "Government" or "this Office") concerning the referenced criminal matter.

## THE PLEA AND OFFENSE

Peter Picone agrees to plead guilty to count four of an eight-count Indictment. Count four charges him with conspiracy to traffic in counterfeit military goods, in violation of 18 U.S.C. § 2320(a). He understands that, to be guilty of this offense, the following essential elements of the offense must be satisfied:

1.   that two or more persons, in some way or manner, agreed to try to accomplish a common and unlawful plan to commit the crime listed in count four, as charged in the Indictment;

2.   that the defendant knew the unlawful purpose of the plan and willfully joined it.[1]

---

[1]   Conspiracy under 18 U.S.C. § 2320(a) has no overt act requirement.

*Jeffrey A. Denner, Esq.*
*Page 2*

To be guilty of trafficking in counterfeit military goods, the following essential elements must be satisfied:

1.    that the defendant intentionally trafficked in goods;

2.    that the defendant knew such goods were counterfeit military goods;[2]

3.    that the defendant knew the use, malfunction, or failure of the counterfeit military goods was likely to cause serious bodily injury or death, the disclosure of classified information, impairment of combat operations, or other significant harm to combat operation, a member of the Armed Forces, or to national security.

**THE PENALTIES**

This offense carries a maximum penalty of 20 years of imprisonment and a $5,000,000 fine. In addition, under 18 U.S.C. § 3583, the Court may impose a term of supervised release of not more than five years to begin at the expiration of any term of imprisonment. The defendant understands that, should he violate any condition of the supervised release, he may be required to serve a further term of imprisonment of up to 3 years per violation.

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571. Under this section, the maximum fine that may be imposed on the defendant is the greatest of the following amounts: (1) twice the gross gain to the defendant resulting from the offense; (2) twice the gross loss resulting from the offense; (3) $250,000; or (4) the amount specified in the section defining the offense, which is $5,000,000.

In addition, the defendant is obligated by 18 U.S.C. § 3013 to pay a special assessment of $100 on each count of conviction. The defendant agrees to pay the special assessment to the Clerk of the Court on the day the guilty plea is accepted.

The defendant is also subject to restitution, as discussed below. Unless otherwise ordered, should the Court impose a fine or restitution of more than $2,500

---

[2]    A "counterfeit military good" is a good that uses a "counterfeit mark" on or in connection with such good and that (A) is falsely identified or labeled as meeting military specifications, or (B) is intended for use in a military or national security application. *See* 18 U.S.C. § 2320(f)(4). A "counterfeit mark," in turn, is a (1) a spurious mark; (2) that is used in connection with trafficking in goods; (3) that is identical with, or substantially indistinguishable from, a mark registered on the principal register in the United States Patent and Trademark Office ("USPTO") and in use; (4) that is applied to or used in connection with the goods for which the mark is registered with the USPTO; and (5) the use of which is likely to cause confusion, to cause mistake or to deceive. *See* 18 U.S.C. § 2320(f)(1).

Jeffrey A. Denner, Esq.
Page 3

as part of the sentence, interest will be charged on the unpaid balance of the fine or restitution not paid within 15 days after the judgment date. 18 U.S.C. § 3612(f). Other penalties and fines may be assessed on the unpaid balance of a fine or restitution pursuant to 18 U.S.C. § 3572 (h), (i) and § 3612(g).

Restitution

In addition to the other penalties provided by law, the Court must also order that the defendant make restitution under 18 U.S.C. § 3663A, and the Government reserves its right to seek restitution on behalf of victims consistent with the provisions of § 3663A. The scope and effect of the order of restitution are set forth in the attached Rider Concerning Restitution. Restitution is payable immediately unless otherwise ordered by the Court.

Forfeiture

The defendant agrees to the forfeiture of (i) specific property, namely, 12,960 integrated circuits bearing counterfeit trademarks which were seized from his residence in Methuen, Massachusetts during the execution of a search warrant on April 24, 2012, and (ii) a money judgment in favor of the United States of America for the sum of money in the amount of seventy thousand and fifty dollars, and no cents ($70,050.00), which are equal to the value of: (a) any article, the making or trafficking of which is prohibited by Title 18, United States Code, Section 2320; (b) any property used, or intended to be used in any manner or part to commit or facilitate the offense alleged in count four of the Indictment, conspiracy to traffic in counterfeit military goods, in violation of Title 18, United States Code, Section 2320(a); and (c) any and all property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as the result of the offense alleged in count four of the Indictment, conspiracy to traffic in counterfeit military goods, in violation of Title 18, United States Code, Section 2320(a).

The defendant agrees that the proffer of evidence supporting his guilty plea is sufficient evidence to support this forfeiture. The defendant agrees that the Court may enter a preliminary Consent Order of Forfeiture for this property at the time of his guilty plea or at any time before sentencing. The defendant agrees that the Court will enter a Final Order of Forfeiture for this property as a part of his sentence.

The defendant agrees that this plea agreement permits the government to seek to forfeit any of his assets, real or personal, that are subject to forfeiture under any federal statute, whether or not this agreement specifically identifies the asset. Regarding any asset or property, the defendant agrees to forfeiture of all interest in:

*Jeffrey A. Denner, Esq.*
*Page 4*

> (1) any article, the making or trafficking of which is prohibited by the offense to which the defendant is pleading guilty;
>
> (2) any and all of the defendant's property used, or intended to be used in any manner or part to commit or facilitate the commission of the offense to which the defendant is pleading guilty;
>
> (3) any and all property, real or personal, which constitutes or is derived from proceeds obtained directly or indirectly, as the result of the offense to which the defendant is pleading guilty; and
>
> (4) any substitute assets for property otherwise subject to forfeiture.

See 18 U.S.C. § 2323; 21 U.S.C. § 853.

By this plea agreement, the defendant agrees that he has waived any and all interest he has in these assets or properties and consented to their forfeiture by whatever process the government chooses.  The defendant agrees that the government may use this waiver and consent in any administrative or judicial forfeiture proceeding, whether criminal or civil, state, local or federal.  If the defendant already has filed a claim to any of these assets or property in any forfeiture process, he hereby agrees to withdraw it.  He also agrees that he will not file a claim to any of these assets or property in any future forfeiture proceeding of whatever type.  In the event that the law enforcement agency having custody of the property decides not to pursue forfeiture of the property due to its minimal value, the defendant hereby abandons any interest he has in such property and consents to its destruction by the law enforcement agency.

The defendant agrees that the government may choose in its sole discretion how it wishes to accomplish forfeiture of the property whose forfeiture he has consented to in this plea agreement, whether by criminal or civil forfeiture, using judicial or non-judicial forfeiture processes.  If the government chooses to effect the forfeiture provisions of this plea agreement through the criminal forfeiture process, the defendant agrees to the entry of orders of forfeiture for such property and waives the requirements of Federal Rule of Criminal Procedure 32.2 regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  The defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case, and he waives any failure by the Court to advise him of this,

pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time of his guilty plea.

The defendant agrees to take all necessary actions to identify all assets over which he exercises or exercised control, directly or indirectly, at any time since February 2007, or in which the defendant has or had during that time any financial interest. The defendant will complete and provide to the undersigned Special Assistant United States Attorney a standard financial disclosure form, which has been provided to you with this plea agreement, no later than two weeks after the plea hearing. The defendant agrees to take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant. The defendant agrees to provide and/or consent to the release of his tax returns for the previous five years. The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable interests or to property to the United States and to testify truthfully in any judicial forfeiture proceeding.

The defendant agrees to waive all constitutional and statutory challenges in any manner (including, but not limited to, direct appeal) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

The defendant understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

## THE SENTENCING GUIDELINES

### Applicability

The defendant understands that the Court is required to consider any applicable Sentencing Guidelines as well as other factors enumerated in 18 U.S.C. § 3553(a) to tailor an appropriate sentence in this case and is not bound by this plea agreement. The defendant agrees that the Sentencing Guideline determinations will be made by the Court, by a preponderance of the evidence, based upon input from the defendant, the Government, and the United States Probation Office. The defendant further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated, including if the sentence is outside any of the ranges set forth in this agreement.

*Jeffrey A. Denner, Esq.*
*Page 6*

Acceptance of Responsibility

At this time, the Government agrees to recommend that the Court reduce by two levels the defendant's adjusted offense level under § 3E1.1(a) of the Sentencing Guidelines, based on the defendant's prompt recognition and affirmative acceptance of personal responsibility for the offense. Moreover, should the defendant qualify for a decrease under § 3E1.1(a) and his offense level determined prior to the operation of subsection (a) is level 16 or greater, the Government will file a motion with the Court pursuant to § 3E1.1(b) which recommends that the Court reduce the defendant's Adjusted Offense Level by one additional level based on his prompt notification of his intention to enter a plea of guilty. The defendant expressly understands that the Court is not obligated to accept the Government's recommendations on the reductions.

The above-listed recommendations are conditioned upon the defendant's affirmative demonstration of acceptance of responsibility, by (1) truthfully admitting the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under Sentencing Guideline § 1B1.3, and (2) truthfully disclosing to the Probation Office personal information requested, including the submission of a complete and truthful financial statement detailing the defendant's financial condition.

In addition, the Government expressly reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant engages in any acts, unknown to the Government at the time of the signing of this agreement, which (1) indicate that the defendant has not terminated or withdrawn from criminal conduct or associations (Sentencing Guideline § 3E1.1); (2) could provide a basis for an adjustment for obstructing or impeding the administration of justice (Sentencing Guideline § 3C1.1); or (3) constitute a violation of any condition of release. Moreover, the Government reserves the right to seek denial of the adjustment for acceptance of responsibility if the defendant seeks to withdraw his plea of guilty or takes a position at sentencing, or otherwise, which, in the Government's assessment, is inconsistent with affirmative acceptance of personal responsibility. The defendant understands that he may not withdraw his plea of guilty if, for the reasons explained above, the Government does not make one or both of the recommendations or seeks denial of the adjustment for acceptance of responsibility.

Stipulation

Pursuant to § 6B1.4 of the Sentencing Guidelines, the defendant and the Government have entered into a stipulation, which is attached to and made a part of this plea agreement. The defendant understands that this stipulation does not set forth all of the relevant conduct and characteristics that may be considered by

*Jeffrey A. Denner, Esq.*
*Page 7*

the Court for purposes of sentencing. The defendant understands that this stipulation is not binding on the Court. The defendant also understands that the Government and the United States Probation Office are obligated to advise the Court of any additional relevant facts that subsequently come to their attention.

<u>Guideline Stipulation</u>

The parties agree as follows:

The Guidelines Manual in effect on the date of sentencing is used to determine the applicable Guidelines range.

The defendant's base offense level under U.S.S.G. § 2B5.3(a) is 8. That level is increased by 12 levels because the infringement amount exceeded $200,000, *see* U.S.S.G. §§ 2B5.3(b)(1)(B), 2B1.1(b)(1)(G). Two (2) additional levels are added because the offense involved the importation of infringing items, *see* U.S.S.G. § 2B5.3(b)(3)(A), and two (2) more levels are added because the defendant was an organizer, leader, manager, or supervisor in the criminal activity. *See* U.S.S.G. § 3B1.1(c). Three (3) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 21.

Based on an initial assessment, the parties agree that the defendant falls within Criminal History Category I. The parties reserve the right to recalculate the defendant's Criminal History Category and corresponding sentencing ranges if this initial assessment proves inaccurate.

A total offense level 21, assuming a Criminal History Category I, would result in a range of 37 to 46 months of imprisonment (sentencing table) and a fine range of $7,500 to $75,000, U.S.S.G. § 5E1.2(c)(3). The defendant is also subject to a supervised release term of 2 years to 5 years. U.S.S.G. § 5D1.2.

The defendant reserves his right to argue for a downward departure from the sentencing range set forth above solely on the basis of diminished capacity. *See* U.S.S.G. § 5K2.13. The Government reserves its right to object to such a departure, and no matter what the Court ultimately determines the total offense level to be, the Government reserves its right to seek an upward departure, a non-Guidelines or Guidelines sentence of up to 46 months of imprisonment. Otherwise, neither party will seek a departure or seek any adjustment not set forth herein. Nor will either party suggest that the Probation Department consider a departure or adjustment not set forth herein, or suggest that the Court sua sponte consider a departure or adjustment not identified above.

The defendant expressly understands that the Court is not bound by this agreement on the Guideline ranges specified above. The defendant further

*Jeffrey A. Denner, Esq.*
*Page 8*

understands that he will not be permitted to withdraw the plea of guilty if the Court imposes a sentence outside any of the ranges set forth in this agreement.

In the event the Probation Office or the Court contemplates any sentencing calculations different from those stipulated by the parties, the parties reserve the right to respond to any inquiries and make appropriate legal arguments regarding the proposed alternate calculations.

<u>Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence</u>

The defendant acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence.  The defendant agrees not to appeal or collaterally attack his conviction in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255 and/or § 2241.  Nor will he pursue such an appeal or collateral attack to challenge the sentence imposed by the Court if that sentence does not exceed 46 months, a 5-year term of supervised release, a $100 special assessment, a $70,050 forfeiture judgment, and any restitution ordered by the Court, even if the Court imposes such a sentence based on an analysis different from that specified above.  Similarly, the Government will not appeal a sentence imposed within or above the stipulated sentencing range.  The Government and the defendant agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with, in whole or in part, the undischarged portion of any other sentence that has been imposed on the defendant at the time of sentencing in this case.  The defendant acknowledges that he is knowingly and intelligently waiving these rights.  Furthermore, the parties agree that any challenge to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver.

<u>Information to the Court</u>

The Government reserves its right to address the Court with respect to an appropriate sentence to be imposed in this case.  Moreover, the Government will discuss the facts of this case, including information regarding the defendant's background and character, 18 U.S.C. § 3661, with the United States Probation Office and will provide the Probation Officer with access to material in its file, with the exception of grand jury material.

*Jeffrey A. Denner, Esq.*
*Page 9*

## WAIVER OF RIGHTS

### Waiver of Trial Rights and Consequences of Guilty Plea

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.

The defendant understands that he has the right to plead not guilty or to persist in that plea if it has already been made, the right to a public trial, the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against him, the right not to be compelled to incriminate himself, the right to testify and present evidence, and the right to compel the attendance of witnesses to testify in his defense.  The defendant understands that by pleading guilty he waives and gives up those rights and that, if the plea of guilty is accepted by the Court, there will not be a further trial of any kind.

The defendant understands that, if he pleads guilty, the Court may ask him questions about each offense to which he pleads guilty, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making false statements.

### Waiver of Statute of Limitations

The defendant agrees that, should the conviction following defendant's plea of guilty pursuant to this plea agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this plea agreement (including any indictment or counts the Government has agreed to dismiss at sentencing pursuant to this plea agreement) may be commenced or reinstated against defendant, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement or reinstatement of such prosecution.  The defendant agrees to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date the plea agreement is signed.

## ACKNOWLEDGMENT OF GUILT AND VOLUNTARINESS OF PLEA

The defendant acknowledges that he is entering into this agreement and is pleading guilty freely and voluntarily because he is guilty.  The defendant further acknowledges that he is entering into this agreement without reliance upon any discussions between the Government and him (other than those described in the plea agreement letter), without promise of benefit of any kind (other than the concessions contained in the plea agreement letter), and without threats, force,

*Jeffrey A. Denner, Esq.*
*Page 10*

intimidation, or coercion of any kind.  The defendant further acknowledges his understanding of the nature of the offense to which he is pleading guilty, including the penalties provided by law.  The defendant also acknowledges his complete satisfaction with the representation and advice received from his undersigned attorney.  The defendant and his undersigned counsel are unaware of any conflict of interest concerning counsel's representation of the defendant in the case.

The defendant acknowledges that he is not a "prevailing party" within the meaning of Public Law 105-119, section 617 ("the Hyde Amendment") with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement.  The defendant voluntarily, knowingly, and intelligently waives any rights he may have to seek  attorney's fees and other litigation expenses under the Hyde Amendment.

## SCOPE OF THE AGREEMENT

The defendant acknowledges that this agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority.  The defendant acknowledges that no representations have been made to him with respect to any civil or administrative consequences that may result from this plea of guilty because such matters are solely within the province and discretion of the specific administrative or governmental entity involved.  Finally, the defendant acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving him.

## COLLATERAL CONSEQUENCES

The defendant understands that he will be adjudicated guilty of each offense to which he has pleaded guilty and will be deprived of certain rights, such as the right to hold public office, to serve on a jury, to possess firearms, and in some states, the right to vote.  Further, the defendant understands that if he is not a citizen of the United States, a plea of guilty may result in removal from the United States, denial of citizenship, and denial of admission to the United States in the future.  The defendant understands that pursuant to section 203(b) of the Justice For All Act, the Bureau of Prisons or the Probation Office will collect a DNA sample from the defendant for analysis and indexing. Finally, the defendant understands that the Government reserves the right to notify any state or federal agency by which he is licensed, or with which he does business, as well as any current or future employer of the fact of his conviction.

*Jeffrey A. Denner, Esq.*
*Page 11*

## SATISFACTION OF FEDERAL CRIMINAL LIABILITY; BREACH

The defendant's guilty plea, if accepted by the Court, will satisfy the federal criminal liability of the defendant in the District of Connecticut as a result of his participation in trafficking in counterfeit military goods, wire fraud and money laundering, which form the basis of the indictment in this case. After sentencing, the Government will move to dismiss counts one and three through eight of the indictment.

The defendant understands that if, before sentencing, he violates any term or condition of this agreement, engages in any criminal activity, or fails to appear for sentencing, the Government may void all or part of this agreement. If the agreement is voided in whole or in part, defendant will not be permitted to withdraw his plea of guilty.

## NO OTHER PROMISES

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this plea agreement, and none will be entered into unless set forth in writing, signed by all the parties.

This letter shall be presented to the Court, in open court, and filed in this case.

Very truly yours,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*CW.Nyl for Carol Sipperly*

CAROL SIPPERLY
SPECIAL ASSISTANT
UNITED STATES ATTORNEY

EVAN WILLIAMS
SENIOR COUNSEL
COMPUTER CRIME & INTELLECTUAL
PROPERTY SECTION

*Jeffrey A. Denner, Esq.*
*Page 12*

The defendant certifies that he has read this plea agreement letter and its attachment(s) or has had it read or translated to him, that he has had ample time to discuss this agreement and its attachment(s) with counsel and that he fully understands and accepts its terms.

_____          6/3/14
PETER PICONE                                Date
The Defendant

I have thoroughly read, reviewed and explained this plea agreement and its attachment(s) to my client who advises me that he understands and accepts its terms.

_____          6/3/14
JEFFREY A. DENNER, ESQ.                     Date
Attorney for the Defendant

*Jeffrey A. Denner, Esq.*
*Page 13*

## STIPULATION OF OFFENSE CONDUCT

The defendant PETER PICONE and the Government stipulate to the following offense conduct that gives rise to the defendant's agreement to plead guilty to the indictment.

In April 2005, the defendant founded Tytronix, Inc. ("Tytronix"), located first in Lawrence, Massachusetts and later in Methuen, Massachusetts, and served as its president and director until its voluntary dissolution in August 2010.  From August 2009 through at least December 2012, the defendant owned and operated Epic International Electronics ("Epic"), also located in Methuen, and served as its president and director.

The defendant, first through Tytronix and later through Epic, bought integrated circuits (ICs) bearing counterfeit marks from sources in China and Hong Kong, imported them to the United States, and resold them to customers both in the United States and abroad.  This continued from at least February 2007 through April 2012.

The defendant conspired with the suppliers to traffic in counterfeit military goods.  For example, he was in frequent contact, via Microsoft Network Messenger chats, and also email, with his suppliers in China and Hong Kong.  In their communications, he wrote openly about, among other things: (i) his purchase of most of his ICs from China and Hong Kong, although he told his customers the ICs came from Eastern Europe; (ii) his assumption of the risk of "fake parts" because it was his "whole biz"; and (iii) the "counterfeit parts [of a Chinese supplier] that we have sitting here in our office."

From February 2007 through November 2011, Tytronix and Epic had at least 23 express consignment (international mail) shipments of ICs bearing counterfeit marks seized by United States Customs and Border Protection.  The marks were counterfeits of marks registered on the principal register of the United States Patent and Trademark Office ("USPTO") for use in connection with the trafficking of ICs, and in use, which were likely to cause confusion, mistake and to deceive.  The total value of these ICs was $65,867.

On March 5, 2009, Tytronix sold 33 ICs bearing counterfeit Xilinx marks to I-Group Electronics ("I-Group"), a defense contractor located in Florida, which in turn was fulfilling a contract with the Naval Supply Systems Command, Fleet and Industrial Supply Center.  Testing by I-Group revealed that the ICs were commercial grade parts which had been resurfaced to change the date code and make them appear suitable for use in military equipment.  According to the United States Navy, the ICs were destined for use in the secondary propulsion system of an active-duty nuclear submarine.  The marks were counterfeits of Xilinx marks

*Jeffrey A. Denner, Esq.*
*Page 14*

registered on the principal register of the USPTO for use in connection with the trafficking of ICs, and in use, which were likely to cause confusion, mistake and to deceive. The total value of these ICs was $68,000.

On about November 10, 2011, the defendant accepted an email order on behalf of Epic from a customer for "new, unused ICs" to be shipped to the Naval Submarine Support Center ("NSSC") in Groton, Connecticut. On about November 29, 2011, the defendant caused to be shipped to the NSSC 10 ICs which the defendant knew bore counterfeit Xilinx marks, and included a purported testing report with the name of a fictional testing operator which the defendant made up to make his business seem more substantial than it was. Testing by the Navy revealed that the ICs were not new and had been manipulated to hide their origins. The marks were counterfeits of Xilinx marks registered on the principal register of the USPTO for use in connection with the trafficking of ICs, and in use, which were likely to cause confusion, mistake and to deceive. The defendant knew that the ICs were intended for use in a military application, and that their malfunction or failure was likely to cause impairment of combat operations and other significant harm to national security.

On about January 27, 2012, the defendant accepted an email order from a customer for "new, unused ICs" to be shipped to the NSSC for supply "to the Navy on a contract they have for a new submarine." On about February 21, the defendant caused to be shipped to the NSSC 100 ICs which the defendant knew bore counterfeit National Semiconductor marks and 25 ICs which the defendant knew bore counterfeit Motorola marks. The defendant also included with the shipment a purported testing report signed by the same fictional testing operator which the defendant had used for his November 2011 sale to the NSSC. Testing by the Navy revealed that the ICs were not new and had been manipulated to hide their origins. The marks were counterfeits of National Semiconductor and Motorola marks registered on the principal register of the USPTO for use in connection with the trafficking of ICs, and in use, which were likely to cause confusion, mistake and to deceive. The defendant knew that the ICs were intended for use in a military application, and that their malfunction or failure was likely to cause impairment of combat operations and other significant harm to national security.

The total value of the Xilinx and National Semiconductor ICs sold to the NSSC was $2,050.

On April 24, 2012, federal agents executed a search warrant at the offices of Epic, which was also the defendant's residence, in Methuen, Massachusetts. They seized approximately 12,960 ICs bearing the counterfeit marks of at least 35 different rights holders. The defendant knew that all or most of these ICs bore counterfeit marks, and yet, if they had not been seized, his intention was to sell them, including to contractors doing business with the United States Navy, for use

in military applications, and that their malfunction or failure was likely cause impairment of combat operations and significant harm to national security. The marks were counterfeits of marks registered on the principal register of the USPTO for use in connection with the trafficking of ICs, and in use, which were likely to cause confusion, mistake and to deceive. The total value of the ICs seized from Epic's offices was approximately $216,159.

Federal agents also recovered from Epic's offices business records, in both electronic and paper form, documenting 741 sales of ICs, totaling $2,581,714, to customers who had specifically requested new ICs and/or ICs not originating in China. Instead, the defendant sold the customers refurbished ICs from China.

Finally, from March 2007 through December 2012, the defendant made 310 wire transfers totaling $1,760,035 from Tytronix and Epic bank accounts in the United States to the bank accounts in China and Hong Kong of his suppliers. These payments were for ICs, including those described above which bore counterfeit marks.

The written stipulation above is incorporated into the preceding plea agreement. The defendant and the Government reserve their right to present additional relevant offense conduct to the attention of the Court in connection with sentencing.

PETER PICONE
The Defendant

CAROL SIPPERLY
SPECIAL ASSISTANT
    UNITED STATES ATTORNEY

JEFFREY A. DENNER, ESQ.
Attorney for the Defendant

EVAN WILLIAMS
SENIOR COUNSEL
COMPUTER CRIME & INTELLECTUAL
    PROPERTY SECTION

## RIDER CONCERNING RESTITUTION

The Court shall order that the defendant make restitution under 18 U.S.C. § 3663A. The order of restitution may include:

1. If the offense resulted in damage to or loss or destruction of property of a victim of the offense, the order of restitution shall require the defendant to:

   A. Return the property to the owner of the property or someone designated by the owner; or

   B. If return of the property is impossible, impracticable, or inadequate, pay an amount equal to:

      The greater of -
      (I) the value of the property on the date of the damage, loss, or destruction; or

      (II) the value of the property on the date of sentencing, less the value as of the date the property is returned.

2. In the case of an offense resulting in bodily injury to a victim –

   A. Pay an amount equal to the costs of necessary medical and related professional services and devices related to physical, psychiatric, and psychological care; including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

   B. Pay an amount equal to the cost of necessary physical and occupational therapy and rehabilitation; and

   C. Reimburse the victim for income lost by such victim as a result of such offense;

3. In the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services; and

4. In any case, reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

*Jeffrey A. Denner, Esq.*
*Page 17*

The order of restitution has the effect of a civil judgment against the defendant.  In addition to the court-ordered restitution, the court may order that the conditions of its order of restitution be made a condition of probation or supervised release.  Failure to make restitution as ordered may result in a revocation of probation, or a modification of the conditions of supervised release, or in the defendant being held in contempt under 18 U.S.C. § 3583(e). Failure to pay restitution may also result in the defendant's re-sentencing to any sentence which might originally have been imposed by the Court.  *See* 18 U.S.C. §§ 3614; 3613A. The Court may also order that the defendant give notice to any victim(s) of his offense under 18 U.S.C. § 3555.