UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            3:13CR00128(AWT)

      vs.

PETER PICONE

                      HARTFORD, CONNECTICUT
          Defendant     OCTOBER 6, 2015

- - - - - - - - - - - - - - - x

**SENTENCING**

**VOLUME II**

BEFORE:

     HON. ALVIN W. THOMPSON, U.S.D.J.


APPEARANCES:

   FOR THE GOVERNMENT:

      U. S. DEPARTMENT OF JUSTICE
      Computer Crime & Intellectual Property
      1301 New York Avenue  Ste. 600
      Washington, DC  20005
      BY:  EVAN CHARLES WILLIAMS, ESQ.

      OFFICE OF THE UNITED STATES ATTORNEY
      157 Church Street   23rd floor
      New Haven, Connecticut  06519
      BY:  SARALA VIDYA NAGALA, AUSA

   FOR THE DEFENDANT:

      JEFFREY DENNER ASSOCATES
      Four Longfellow Place
      Boston, Massachusetts  02114
      BY:  JEFFREY A. DENNER, ESQ.


                    Corinna F. Thompson, RPR
                    Official Court Reporter

1                        **4:07 PM**

2              THE COURT:  Good afternoon.  Please be seated

3     everyone.

4              We're here for a continuation of the

5     sentencing proceedings which began on August 14th in

6     the matter of United States of America versus Peter

7     Picone.  The docket number is 3:13CR128.

8              Would counsel please state their appearances

9     for the record and identify anyone at seated at counsel

10    table with you.

11             MR. WILLIAMS:  Evan Williams for the United

12    States.

13             MS. NAGALA:  Sarala Nagala for the United

14    States, Your Honor, joined at counsel table by Special

15    Agent Jessica Harrington of Defense Criminal

16    Investigative Services.

17             THE COURT:  Thank you.

18             MR. DENNER:  Good afternoon, Your Honor.

19    Jeffrey Denner the attorney for Peter Picone, the

20    defendant, who's sitting to my right.

21             THE COURT:  Thank you.  The record should

22    reflect that United States Probation Officer Aponte is

23    present.  He's seated in the jury box.

24             Since we were last here I have received the

25    defendant's supplementary memorandum in aid of

1    sentencing, as well as the government's response to the

2    defendant's memorandum.  I have reviewed them both and

3    the attachments to the defendant's memorandum.  I also

4    obtained a substitute copy of the amended consent order

5    of forfeiture which has been filed.

6            Do counsel want to add anything or does

7    Mr. Picone want to add anything before I proceed

8    further?

9            MR. DENNER:  Your Honor, other than I would

10   like an opportunity to speak probably for five or 10

11   minutes, tops, relative to our sentencing

12   recommendations in the context of what has been filed by

13   the parties.  I really don't have much to add, so when

14   that time comes --

15           THE COURT:  Well, this would be the time to do

16   that, Mr. Denner.

17           MR. DENNER:  Thank you, Your Honor.

18           Your Honor, I am mindful of the different

19   issues that were raised in court when we were here; that

20   there is an issue in the Court's mind, I would say, very

21   clearly about what the connection between whatever

22   mental illness, psychopathology, whatever we call it,

23   that the defendant is inflicted with, how that as

24   contributed to the offense conduct, either directly,

25   indirectly, significantly or in any indirect or direct

1    way.  I would only suggest to the Court that we

2    obviously have to play the cards we're dealt with.

3            This was a defendant who came from a, for want

4    of a better term, a socioeconomic class and educational

5    background, dropping out in ninth grade, who, while

6    incredibly sick, in my estimation, and afflicted with

7    this cycle of anxiety, panic attacks, followed by long

8    periods of depression often accompanied by serious, a

9    year, year and half vegetative states, who literally

10   never went to see a psychiatrist.  I think in all the

11   medical records that I was able to give Your Honor,

12   there was probably one 2007 report with Mr. Moverman,

13   who was a psychologist who basically repeated what

14   everyone else said about the long history of impairment

15   that he had, the cocktails of psychoactive medications

16   he was taking over a period of time, a long period of

17   time.  He has not been created -- we have not created

18   this record of 20, 25 years for purposes of sentencing.

19   We simply haven't.

20           I am mindful that this is also a defendant,

21   while not going to psychiatrists and psychologists,

22   largely going to primary physicians who take a less

23   sophisticated view of that and don't express the

24   psychotherapeutic process the way psychiatrists do.  If

25   he had been seeing them over time with the progress

1    notes, whatever, that the Court could very correctly

2    draw an inference that this is an individual who was so

3    impaired that it certainly didn't affect necessarily --

4    because the impairment would come and go, it would

5    spike, it would be better, it would be worse -- didn't

6    necessarily affect the way he always conducted business.

7    There may be a week or so that he couldn't work at all,

8    but then another week where he was relatively okay.

9            I know my brothers and sisters in the

10   government have talked about he had a very sophisticated

11   business and so forth and so on.  And I think that,

12   though I would dispute some of that, I think he put a

13   pretty decent business together for somebody with his

14   impairments.

15           I would respectfully suggest to the Court that

16   I think there's if not a misconception, there's a

17   stereotype that if somebody is impaired they can't be

18   bright and that's just not the case.  I don't think his

19   ability to always to conduct business reflects the

20   extent of his impairment and the extent to which it

21   compromises judgment.  And that's what I'm trying to

22   basically say to this Court, as respectfully and

23   passionately as I can, that you have an individual here,

24   his very judgment was absolutely, Your Honor, deeply

25   affected by the fact that he would have these intense

1    periods of anxiety, panic attacks followed by

2    depression.

3           I could have hired any one of many forensic

4    psychiatrists or psychologists to come in after the fact

5    who had never seen him before and go through the same

6    records I did and draw inferences that would have said

7    to a reasonable degree of psychiatric certainty,

8    psychological certainty, this is a long-standing medical

9    problem that invariably would have affected his judgment

10   because general anxiety disorder, which is an Axis I

11   disorder that Dr. Moverman did identify is what he was

12   afflicted with in 2007 during the offense conduct.

13   Again, as an Axis I disorder, it's one of more serious

14   disorders, as I'm sure the Court knows, in the DSM.

15   It's of a psychotic nature that gets bad enough.  He has

16   told you there were times where he had difficulty

17   differentiating reality from fantasy and whatever.

18          I think he committed these crimes because he

19   made a huge mistake.  I think he knew what he was doing.

20   I think he was greedy.  I think there's an element of

21   greed here.  I think he was desperate.  He dropped out

22   of school in the ninth grade and the same reasons that

23   he had to leave the military because he was hospitalized

24   for month on end with depression and panic, the same

25   reason he got afforded Social Security disability

1    because they took a good look at him and knew he

2    couldn't function and the same reason he was seeing a

3    series of doctors over two decades.  He would go in

4    there and he presented to all of them as somebody who's

5    just taken with anxiety followed by cycles of

6    depression.  And after the military -- he did his very

7    best to serve the country on a ready combat status

8    overseas -- the PTSD, post traumatic stress disorder

9    context as well.

10           Do I think that this -- that he would have

11   made these same bad judgments and committed these crimes

12   if he hadn't suffered from that?  I have no idea.  If

13   any psychologist or psychiatrist says they have an idea

14   then they're just guessing and they're just making stuff

15   up too.  That's what 43 years of being involved in

16   criminal defense with a big piece of it in forensic

17   psychiatry tells me.  And that's what I tell you,

18   respectfully.  Nobody knows these things.  It's

19   everybody's best guess.  But we have a sentencing model

20   here that I think does afford him some relief,

21   respectfully.

22           I, on his behalf, signed a plea agreement that

23   said basically we were only looking to argue to this

24   Court for a downward departure under 5K2.13, diminished

25   capacity.  That requires a more significant type of

1    contribution to the offense conduct by whatever the

2    underlying psychopathology is than some of the other

3    sections that I'm going to talk about now.  I feel,

4    under the agreement, I'm able to talk about them as well

5    because one paragraph in our plea agreement suggests

6    that if the Court or the probation office brings up

7    certain issues, that we're free to comment them and

8    argue about them.  In this case the probation department

9    has brought up certain issues sua sponte.  Those issues

10   relate to a related provision in the Sentencing

11   Guidelines, which is 5H1.3, which talks about emotional

12   problems, anxiety and doesn't require the same quantum,

13   same level of contribution, ultimately, to the offense

14   conduct.

15        It was also mentioned in the probation

16   report -- and I think very accurately so -- that he has

17   a military background.  And that under one of the

18   applicable provisions of the Sentencing Guidelines also

19   can be something under a variance theory or departure

20   theory Your Honor can take into consideration.

21        They also bring up the notion in the probation

22   PSR -- I think again very accurately -- that here is

23   somebody who's suffering from extreme anxiety, extreme

24   anxiety attacks, panic attacks, depression, when in

25   combination with his military service overseas, which

1    generated the PTSD that you find replete in his medical

2    records, would be certainly something that this Court

3    could take into consideration in a variance model; that

4    the combination -- I believe what the probation officer

5    suggests and if I'm misstating it, I apologize -- but

6    that the extent of his mental illness, while not

7    extraordinary, certainly is atypical, kind out of the

8    heartland that you need for a variance.  In combination

9    with his military service and the pressures that that

10   put on him and the added burden of the PTSD, yeah, there

11   certainly is a reasonable basis to consider that you

12   could adjust his sentence downward in a variance model

13   versus a departure model.

14           I believe also in there somewhere, Your Honor,

15   there was another final statement which suggested that

16   the presumptive guidelines in this case certainly may be

17   not required to effectuate the purposes of the

18   3553(a) -- effectuate the purposes of the Sentencing Act

19   in terms of all of the policy considerations contained

20   therein; that this is somebody, when you take a look at

21   the whole mosaic of him and all the components, this is

22   somebody who, while suffering from a variety of pretty

23   severe mental illnesses over a lifetime, the cycle of

24   anxiety, depression, panic attacks, the context of the

25   PTSD after his military service from '94 to '96 in a

1     combat arena, this is somebody who deserves some extra

2     consideration in the context of what the Guideline --

3     what should be punished, what should be mitigating

4     factors and what should be exacerbating factors.  I'm

5     arguing that to this Court.  I think that, combined with

6     what I see and based on what my brother has talked about

7     and my own evaluation of what sentences are for this

8     crime nationwide, I the parity of sentencing also

9     requires lesser.

10          I have suggested in my -- last time we were

11    together and in my sentencing memorandum that an

12    alternate sentence that did not include incarceration

13    would be justified.  The truth is I don't know what the

14    best sentence is here.  I don't know what the fairest

15    sentence is here.  I don't sentence people.  For 43

16    years I've watched people come and go and I've seen a

17    variety of judges adapting different models for

18    sentencing.

19          I will tell you that I think he broke the law.

20    I think that he has been laboring so difficultly to

21    raise a family, to be the man of his family, to be a

22    good husband, to be a good father for a very long time.

23    I think certainly his mental illness has contributed

24    mightily to who he is with his fears of what he can and

25    can't do, being on the couch for months at a time.  He's

1       a very scared individual.  He's lived his life in kind

2       of a terrified shell just kind of waiting to implode,

3       which he periodically has done.

4              I respectfully suggest that some sentence,

5       some sentence certainly below the Guidelines, however

6       you get there with the different models and tools that

7       are available to this Court, would certainly be fair.

8              I would respectfully ask the Court that if you

9       decide that a strict alternate sentence that would

10      include treatment, that would include house arrest, that

11      would include something other than actual imprisonment

12      in a BOP facility is ordered, I would ask that he be

13      designated -- you make a judicial recommendation to

14      designate him to the camp at Devins.  He would be

15      amenable to the treatment he gets there.

16             I will tell you that certainly one factor in

17      sentencing -- and taking the psychiatric stuff into

18      consideration, particularly under Section 5.13H -- or 5.

19      whatever, that one I mentioned before that I'm now

20      forgetting -- but the mental illness is not the downward

21      departure.  One important aspect of that is that for

22      purposes of sentencing, if a sentence other than a

23      Guideline sentence -- and certainly, to be in a place

24      where treatment is available to him because he is in

25      constant treatment, he's constantly medicated and I

1    think at some point clearly, if you sentence him to

2    prison, he's going to get out, and obviously there are

3    many different reasons why his now treatment should

4    continue.

5            I would also as a last thought point out to

6    the Court this has been a person who's been using

7    marijuana for a long time to self-medicate.  I would

8    think if Your Honor thinks that the most just balancing

9    of all the equities in this case is to give him a

10   sentence to the attorney general custodial sentence,

11   that I would ask that you make a judicial recommendation

12   to the 500-hour program as well.

13           Thank you, sir.

14           THE COURT:  Mr. Williams.

15           MR. WILLIAMS:  Thank you, Your Honor.

16           The Court gave the government ample

17   opportunity to argue at the last proceeding so really

18   have very little to add.  The only thing I wanted to

19   mention is since counsel did raise the alternate ground

20   for departure today under 5H1.3, that at least as the

21   government reads the case law -- and I refer in

22   particular to United States against Brady, 417 F.3d

23   326 -- there is actually, at least the Second Circuit

24   has found there is a causation requirement under 5H1.3

25   as well.

1          Other than that we're prepared to rest on the

2    record.

3          Thank you, Your Honor.

4          THE COURT:  Thank you.  Did we ever get a list

5    of victims, by the way, with addresses and names?

6          MR. WILLIAMS:  I thought that I had sent that

7    to the Court, but I can definitely check as soon as I

8    get back to the office.

9          THE COURT:  Thank you.

10          (Pause.)

11          THE COURT:  Before imposing sentence I do want

12    to explain the factors that a district court must take

13    into consideration in determining the sentence to be

14    imposed in a particular case.  Under Title 18 United

15    States Code Section 3553, the factors applicable in this

16    case that are to be considered by a Court in imposing

17    sentence are as follows:

18          One, the nature and circumstances of the

19    offense and the history and characteristics of the

20    defendant.

21          Two, the need for the sentence imposed to

22    serve the various purposes of a criminal sentence, which

23    I will schedule discuss in a moment.

24          Three, the kinds of sentences available.

25          Four, the kinds of sentence and the sentencing

1       range established for the defendant's offense committed

2       by one with the defendant's criminal history category

3       under the Sentencing Guidelines.

4               Five, any pertinent policy statement issued by

5       the Sentencing Commission.

6               Six, the need to avoid unwarranted sentence

7       disparities among defendants with similar records who

8       have been found guilty of similar conduct.

9               And seven, the need to provide restitution to

10      any victims of the offense.

11              Mr. Picone, I have taken into account each of

12      these factors and I'm going to explain to you how I've

13      reached a decision as to what I believe is the

14      appropriate sentence in your case.

15              First of all, I have reviewed the Presentence

16      Report prepared by the Probation Office.  I have

17      considered your counsel's remarks, both when we were

18      here last and today, as well as your remarks and the

19      remarks of counsel for the government.  I did receive

20      sentencing memoranda and a victim impact statement from

21      the government and I also heard the testimony of a

22      representative of the United States Navy on August 14th,

23      I believe Admiral Jabaley, as well as I received

24      sentencing memoranda submitted by your counsel which

25      includes your letter, letters from your family and

1    supporters and, of course, all of the medical records.

2          I have taken into account the need for the

3    sentence in this case to serve the various purposes of a

4    criminal sentence.  Pursuant to Section 3553, the

5    sentence should be sufficient but not greater than

6    necessary to serve these purposes.

7          First, I must consider the need for the

8    sentence imposed to provide just punishment for the

9    offense.  Part of the meaning of a just punishment is

10   that it not be unduly different from sentences received

11   by defendants with similar records who have been

12   convicted of similar conduct.

13         Second, I must consider whether there is a

14   need for the sentence imposed to protect the public from

15   further crimes committed by you.

16         Third, I must consider the need for the

17   sentence imposed to afford adequate deterrence to

18   criminal conduct.

19         Fourth, I must consider the need for the

20   sentence imposed to reflect the serious nature of the

21   offense and to promote respect for the law.

22         And finally, I must also consider the need for

23   the sentence imposed to serve the goal of rehabilitation

24   by considering whether there is a need to provide you

25   with educational or vocational training, medical care or

1    other correctional treatment in the most effective

2    manner.

3              In your case I am most aware of the need to

4    provide just punishment, the need to deter others from

5    committing the offense committed by you and the need for

6    the sentence imposed to reflect the serious nature of

7    the offense.

8              You have moved for a downward departure on two

9    bases:  Guideline Section 5K2.13 and 5H1.3.

10             Guideline Section 5K2.13 provides that a

11   downward departure may be warranted if, one, the

12   defendant committed the offense while suffering from a

13   significantly reduced mental capacity, and, two, the

14   significantly reduced mental capacity contributed

15   substantially to the commission of the offense.

16             Guideline Section 5H1.3 provides that mental

17   and emotional conditions may be relevant in determining

18   whether a departure is warranted if such conditions,

19   individually or in combination with other offender

20   characteristics, are present to an unusual degree and

21   distinguish the case from the typical cases covered by

22   the Guidelines.

23             I have concluded that you have not established

24   that there's a basis for a departure under either

25   provision.

1            With respect to Section 5K2.13 I conclude that

2    you've not established that you committed the offense

3    while suffering from a significantly reduced mental

4    capacity.  Your conduct in including test reports

5    purporting to document the authenticity of the

6    integrated circuits, your signing the documents with the

7    name of a fictional operator, and your switching from

8    one corporate entity to another, because you wanted to

9    avoid scrutiny at the border by using a new company

10   which did not have a negative history, reflect that your

11   course of conduct was a complex course and that

12   undermines your contention that you suffered from a

13   significantly reduced mental capacity.

14           I understand the argument made by your counsel

15   that you could have with had a week where you were

16   diminished and a week where you weren't.  I don't find

17   that to be particularly persuasive because during the

18   week when you weren't I think you could have appreciated

19   the wrongfulness of your conduct.

20           In addition, under Section 5K2.13 it must be

21   shown that a significantly reduced mental capacity

22   contributed substantially to the commission of the

23   offense.  And also under Section 5H1.3 it must be shown

24   that your mental or emotional condition contributed to

25   your commission of the offense.  Counsel for the

1    government properly cited to United States versus Brady,

2    417 F.3d 326, the pin cite is 334 for that proposition.

3    The record here does not support a finding under either

4    section that the required link between diminished

5    capacity or mental and emotional condition is present.

6         First, your conduct in executing the scheme,

7    as noted by the government when we were here last, is

8    conduct that could not have been carried out while you

9    were in a stupor or otherwise unable to keep track of

10   things.

11        In addition, I have reviewed carefully the

12   medical records that have been submitted and they show

13   only that you suffered from a mental and emotional

14   condition in that you have a history of anxiety,

15   depression and panic attacks.  The records do show that

16   your depressive symptoms worsened after the search

17   warrant was executed at your home by federal agents,

18   which is not surprising and also is irrelevant to the

19   analysis with respect to the departure issues because it

20   does not deal with the time period during which you

21   committed the offense.

22        In addition, the records show that in May 2011

23   you were concerned about a possible physical ailment and

24   your anxiety was improving, although you were still, and

25   I quote, slightly depressed.

1          The records show when you saw a doctor in

2     July 2010, you were concerned about a physical

3     ailment -- again, a different one -- which resulted from

4     power lifting and that the pain was worse when you were

5     playing baseball or trying to swim.

6          They show that in May 2009 your business was

7     failing and that you were feeling overwhelmed, and I

8     quote, lately.

9          And they show that in April 2009 your chief

10    complaint was a side effect from withdrawing from one of

11    your medications, and that side effect included anxiety

12    and panic but you had been able to work employed in your

13    own business.

14         Nothing in the medical records reflects any

15    history of having difficulty making judgments or

16    conducting business.

17         The defense sentencing memorandum argues that

18    the defendant's letter and his medical records compel

19    the inference that he is suffering from a medical

20    disorder which disrupted his cognitive process and

21    ability to make rational, non-distorted judgments and

22    operated in a manner which substantially contributed to

23    the commission of the charged offenses.  I have

24    concluded that the medical records instead compel the

25    inference that, notwithstanding the fact that the

1    defendant has a history of anxiety, depression and panic

2    attacks for which he has been treated with a variety of

3    medications, he was able to engage in a very involved

4    and complex course of criminal conduct.  And I note that

5    this is consistent with the fact that in other aspects

6    of his life he has been able to at least function

7    adequately, notwithstanding his anxiety, depression and

8    panic attacks.

9         I looked at the letters that were received

10   from others outside of the defendant and his spouse.

11   They do not reflect his serious condition.

12        Therefore, I conclude that it has not been

13   established here that the requirements for a downward

14   departure under either Section 5K2.13 or Section 5H1.3

15   have been satisfied.  In any event, under the

16   circumstances of the present case, I choose not to

17   exercise my discretion to depart in determining the

18   Guideline range suggested by the Sentencing Guidelines.

19   I reach the same conclusion with respect to the

20   suggestion that a non-Guideline sentence is appropriate

21   here based on the very serious nature of the offense,

22   which was really made quite clear by Admiral Jabaley,

23   and the period of time over which the defendant engaged

24   in this course of criminal activity.

25        I note that I believe it would be

1    inappropriate to place weight in terms of a mitigating

2    factor on the defendant's military service in a case

3    where he is convicted of counterfeiting military goods.

4           Would you please stand, Mr. Picone.

5           Mr. Picone, I sentence you to the custody of

6    the Bureau of Prisons for a period of 37 months.  I am

7    recommending to the Bureau of Prisons that you be

8    designated to the camp at FMC Devins.  I'm also

9    recommending that you be evaluated for mental health

10   treatment while you're there.  I did review the

11   Presentence Report.  I don't think it supports me making

12   a recommendation for the 500-hour residential drug abuse

13   program, but you certainly can request that you be

14   evaluated for that after you report.

15          After imprisonment you shall be placed on

16   supervised release for a period of three years.  You

17   shall be supervised in the district of Massachusetts

18   because you are a resident of that district.

19          A condition of your supervised release will be

20   that you not commit another federal, state or local

21   crime during the term of supervision.

22          As a further condition of your supervised

23   release you shall not possess a controlled substance.

24          In addition, you shall refrain from any

25   unlawful use of a controlled substance and submit to a

1       drug test within 15 days of your release on supervised

2       release and at least two periodic drug tests thereafter

3       for use of a controlled substance.

4               A further condition is that you shall

5       cooperate in the collection of a sample of your DNA.

6               Special conditions of your supervised release

7       shall be as follows:

8               One, you shall make restitution pursuant to

9       Title 18 United States Code Section 3663A in accordance

10      with the restitution order that is being entered in this

11      case.

12              Two, you shall participate in an outpatient

13      mental health treatment program, and the details as to

14      the selection and schedule of the particular program

15      will be determined by the United States Probation

16      Office.  You shall pay all or part of the costs of such

17      treatment based on your ability to pay as approved by

18      the United States Probation Office.

19              Three, you shall provide the probation officer

20      with access to requested financial information.

21              And four, you shall not possess a firearm or

22      other dangerous weapon.

23              Of course all of the standard conditions of

24      supervised release in this district shall also apply in

25      your case, and those conditions will be set forth in the

1    judgment in this case.

2            Mr. Denner, we do have a condition that is in

3    the Guidelines that is not one of our standard

4    conditions here based on a Second Circuit ruling.  I

5    believe it's Number 13.

6            If you violate any of these conditions during

7    your period of supervised release the Court will be free

8    to sentence you to additional time in prison of up to

9    two years.  So you are exposed to a sentence of up to

10   two years in prison during the period of time that you

11   are on supervised release.  The consequences of a

12   failure to comply with the conditions of supervised

13   release are extremely serious and the Court would not

14   hesitate to sentence to you additional time in prison if

15   you violated the terms of your supervised release.

16           Do you understand that, sir?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  Thank you.

19           The Court hereby directs that the Probation

20   Office provide the defendant with a written statement

21   that sets forth all of the conditions of the defendant's

22   supervised release.  The statement shall be sufficiently

23   clear and specific so that it may serve as a guide for

24   the defendant's conduct.

25           Mr. Picone, I'm not ordering you to pay a fine

1    because you do not have the ability to pay a fine in

2    addition to the restitution that is being ordered in

3    your case.

4            You shall be required to pay restitution of

5    $352,076 to the victims of your offense on Count 2

6    pursuant to Title 18 United States Code Sections 3663A

7    and 3664.  You shall make monthly payments in the amount

8    of $300 on the 15th day of each month during the first

9    35 months following your release from imprisonment and

10   the balance of the amount of restitution ordered shall

11   be due and payable on the 15th day of the 36th month

12   following your release from imprisonment.

13           In addition, I note that nothing in this order

14   shall prevent the Bureau of Prisons from implementing

15   the restitution payments in accordance with its Inmate

16   Financial Obligations programs.

17           Each payment will be for the benefit of the

18   victims on a basis that is pro rata with the amount of

19   their respective losses.

20           As required by Section 3664 of Title 18, I

21   have arrived at the schedule for restitution payments

22   after considering your financial resources and other

23   assets, including whether any of those assets are

24   jointly controlled, your projected earnings and other

25   income and any of your financial obligations.

1          Also, in that the purpose of restitution is

2    essentially compensatory, that is to restore a victim,

3    to the extent money can do so, to the position he or it

4    occupied before sustaining injury, I am making the

5    restitution order contingent upon your ability to pay

6    and I am requiring full and complete financial

7    disclosure by you to the Probation Office on a quarterly

8    basis during your period of supervised release.

9          Finally, I do note for both your benefit and

10   the benefit of the victims of your offense that a

11   victim, the government or the offender may petition the

12   Court at any time to modify a restitution order as

13   appropriate in view of a change in the economic

14   circumstances of the offender.

15         Finally, you shall pay a mandatory special

16   assessment of $100 which is due and payable immediately.

17         Also, the amended consent order of forfeiture

18   which pertains to the 35,870 integrated circuits seized

19   on April 24, 2012 and the $70,050 judgment is made final

20   and imposed as part of your sentence in this case

21   pursuant to Federal Rule of Criminal Procedure

22   32.2(b)(3) and shall be included in the judgment.

23         Please be seated, sir.

24         The judgment will be prepared for my signature

25   by the Clerk's Office.

1          Mr. Picone, a defendant ordinarily has the

2    right to appeal within 14 days any sentence that the

3    Court imposes.  However, I note that you agreed in your

4    plea agreement to not appeal or collaterally attack in

5    any proceeding, including a habeas petition, your

6    conviction or sentence if the sentence did not exceed

7    46 months' of imprisonment, a five-year term of

8    supervised release, a $100 mandatory special assessment,

9    a $70,050 forfeiture judgment, and any restitution

10   ordered by the Court.  Therefore, you have waived your

11   right to appeal except with respect to those issues

12   where the right to appeal cannot be waived and with

13   respect to any claim of ineffective assistance of

14   counsel.

15          If you believe you have any grounds for appeal

16   you must file your notice of an appeal within 14 days.

17   The Court will allow you to appeal and to use the

18   services of an attorney at no cost to you if you cannot

19   afford to pay yourself.

20          Do you understand that, sir?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Mr. Denner, is there an

23   application for self-surrender.

24          MR. DENNER:  Yes, Your Honor?

25          THE COURT:  I believe there is a report from

1    the Probation Office that the defendant has been in full

2    compliance?

3                    PROBATION:  Yes, Your Honor.

4                    THE COURT:  Does the government have any

5    feelings with about this one way or the other?

6                    MR. WILLIAMS:  We have no objection to his

7    remaining out on bond.

8                    THE COURT:  In that case the application for

9    self-surrender is granted.  Mr. Picone shall remain on

10   release pending execution of sentence on the conditions

11   that are currently in effect.

12                   Did you have something you wanted me to

13   address, Mr. Denner?

14                   MR. DENNER:  Thank you for letting me appear

15   in your court pro hac vice.

16                   THE COURT:  Mr. Picone, I order that on

17   November 9, 2015, you shall surrender for service of

18   your sentence to the federal correctional facility

19   designated by the Bureau of Prisons or to such other

20   place as the United States Marshal's Service may direct.

21                   Mr. Denner, have you explained to your client

22   the sanctions to which he would be exposed if he fails

23   to surrender himself as ordered by the Court?

24                   MR. DENNER:  I have done that, Your Honor.

25                   THE COURT:  Thank you.

1               Mr. Williams, Mr. Picone pled to Count 2 of

2      the indictment and it was an eight-count indictment.  Is

3      the government moving to dismiss Counts 1 and 3 through

4      8?

5               MR. WILLIAMS:  Yes, we are at this time, Your

6      Honor.

7               THE COURT:  The motion is granted.

8               Is there anything else before we adjourn?

9               MR. WILLIAMS:  Not from the government, Your

10     Honor.  Thank you.

11              MR. DENNER:  Not from the defendant.

12              THE COURT:  In that case, thank you both.

13              MR. WILLIAMS:  Thank you, Your Honor.

14                  (Proceedings adjourned at 4:52 PM)

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T E

2

3          United States vs. Peter Picone

4                3:13CR00128(AWT)

5

6

7          I, Corinna F. Thompson, RPR, Official Court

8     Reporter for the United States District Court for the

9     District of Connecticut, do hereby certify that the

10    foregoing pages, pages 1 – 87, are a true and accurate

11    transcription of my shorthand notes taken in the

12    aforementioned matter on August 14, 2015, to the best of

13    my skill and ability.

14

15

16

17

                      /s/_____

18

                    CORINNA F. THOMPSON, RPR
19                   Official Court Reporter
                    450 Main Street, Room #225
20                  Hartford, Connecticut 06103
                        (860) 547-0580
21

22

23              C E R T I F I C A T E

24

25          United States vs. Peter Picone

1                          3:13CR00128(AWT)

2

3

4          I, Corinna F. Thompson, RPR, Official Court

5  Reporter for the United States District Court for the

6  District of Connecticut, do hereby certify that the

7  foregoing pages, pages 89 – 117, are a true and accurate

8  transcription of my shorthand notes taken in the

9  aforementioned matter on October 6, 2015, to the best of

10  my skill and ability.

11

12

13

14
                   /s/_____
15
                   CORINNA F. THOMPSON, RPR
16                 Official Court Reporter
                   450 Main Street, Room #225
17                 Hartford, Connecticut 06103
                        (860) 547-0580
18

19

20

21

22

23

24

25